**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CATHERINE M.,[1]              )
                             )
              Plaintiff,      )
                             )        **CIVIL ACTION**
v.                           )
                             )        **No. 20-1122-JWL**
ANDREW M. SAUL,              )
**Commissioner of Social Security,**  )
                             )
              Defendant.     )
_____ )


**MEMORANDUM AND ORDER**


Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42

U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the

Administrative Law Judge's (ALJ) evaluation of Plaintiff's allegations of symptoms

related to seizure disorder or in his consideration of medical equivalence to Listing 11.02,

the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.      Background**

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of Social Security disability claimants, it has
determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on March 27, 2017. (R. 21, 327). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating Plaintiff's allegations of symptoms related to seizure disorder and implies the ALJ erred in finding her condition does not meet or equal Listing 11.02 for epilepsy.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  Then the Commissioner assesses residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  Because the ALJ's evaluation of Plaintiff's allegation of symptoms affects evaluation of whether Plaintiff's condition meets or equals the criteria of Listing 11.02, the court addresses the alleged error in evaluating Plaintiff's allegation of symptoms before addressing the implied step three error.

## II.     Evaluation of Plaintiff's Allegation of Disabling Symptoms

Plaintiff claims the ALJ erred in evaluating her allegations of symptoms because he equated not taking anti-seizure medication with not receiving treatment for her seizures, and because he noted she was treated in emergent care only one time for her seizures.  Plaintiff argues that she was taking antiepileptic medication for years, until physicians began to question the etiology of her seizures, believed hypoglycemia contributed to her seizures, and even diagnosed nonepileptic seizures.  (Pl. Br. 15-16).  She argues this record evidence clearly demonstrates she was being treated for her

4

seizures.  Next, Plaintiff argues she is not required to document every seizure by objective testing to support the frequency of seizures, and that variations in reports of seizures are not evidence of inconsistencies because Social Security Ruling (SSR) 16-3p recognizes symptoms may vary over time.  Id. at 18.

The Commissioner argues that the ALJ properly applied SSR 16-3p in considering Plaintiff's allegations of symptoms based on the entire case record.  (Comm'r Br. 7).  He points out Plaintiff alleged that after a seizure she was sleepy and needed days to recover whereas there is no evidence that such symptoms were reported in the medical records or even at the emergency room where she was taken after she fell and injured herself during a seizure.  Id. at 8.  He also points out that Plaintiff told her doctor in May 2018 that she had only three seizures in the last 10 months—Summer 2017, October or November 2017, and April 2018—but told the SSA that she had a seizure every month and later reported two seizures a month.  Id. at 9-10.  He noted Plaintiff stated anti-seizure medication controlled her seizures and reported that it worked "very well," and argues she stopped taking the medication without explanation.  Id. at 10.  In her Reply Brief, Plaintiff reiterates the arguments from her initial brief and argues that her report medication works "very well" was subjective without a definitive meaning reflected in the record.  (R. 3-4).

### A.      Standard for Evaluating Allegations of Symptoms

An ALJ's evaluation of a claimant's allegations of symptoms is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly

the province of the finder of fact" and will not be overturned when supported by

substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's evaluation of a claimant's allegations of symptoms, the

court will usually defer to the ALJ.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir.

1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference

is not an absolute rule").  "However, '[f]indings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133

(10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms.  Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a

non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see

also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3.  These factors include:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(i-vii).

### B.      The ALJ's Evaluation of Plaintiff's Allegations of Symptoms

---

[2] Talley, Broadbent, Wilson, Hackett, Glass, Thompson, Huston, Luna, and Kepler, were all decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416.929).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. §§ 404.1529, 416.929 (2017) is still the proper standard to be used as explained in the regulations in effect on April 17, 2019, when this case was decided.  Nonetheless, to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, they are specifically prohibited by SSR 16-3p, and are no longer a valid factor to be considered.

The ALJ discussed numerous inconsistencies between Plaintiff's allegations of symptoms and the record evidence.  (R. 29-31).  He began by noting that Plaintiff's allegations "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons discussed below."  (R. 29).  He discussed Plaintiff's history of childhood epileptic seizures which resolved for several years but began again in June 2011.  Id. (citing Ex.24F).  He noted that Plaintiff underwent epilepsy monitoring in July 2014, which, although it was before the period at issue here, is notable because an electroencephalogram (EEG) showed multifocal epileptiform activity, and "the Endocrinology reports indicated the claimant's hypoglycemia was not felt to be the cause of her seizures."  Id. at 29-30 (citing Ex. 5F and R. 676).

The ALJ found inconsistencies with the evidence, noting that although Plaintiff reported monthly tonic-clonic type seizures throughout the relevant period, they only resulted in consequences requiring emergency care once during the period.  Id. at 30.  He noted Plaintiff's treatment for hypoglycemic episodes was conservative, and although Plaintiff reported her doctor recommended a continuous glucose monitoring device, the record does not contain such a recommendation.  Id.  He noted Plaintiff indicated disabling migraine headaches but "there are no imaging studies showing any abnormality of the brain or clinical findings showing any residual effects of any headaches."  Id.  He noted Plaintiff "has not presented with a persistent pattern of chronic motor, sensory, strength, or reflex deficits reasonably consistent with her allegations."  (R. 30).  The ALJ noted that on psychological examinations Plaintiff complained of "mood changes,

depression, nervousness, anxiety, and difficulty concentrating" but the doctors found she

"did not appear depressed or anxious, displayed the ability to communicate without any

deficits, and was alert and oriented;" she "was not distractible, adequately expressed her

ideas, and exhibited no gross deficits in her expressive language;" and "she generally

exhibited appropriate speech and behavior, no psychomotor retardation, and normal

judgment." Id. at 31.  The ALJ concluded his evaluation of Plaintiff's allegations by

noting that her

> ability to engage in numerous activities of daily living does not support her
> allegations of disabling mental limitations.  Notably, although the claimant
> testified that she was unable to complete her degree in education, during the
> relevant period, she was able to attend and complete a full schedule of
> college courses, and work part-time during the relevant period.

Id.

## C.      Analysis

Despite the numerous inconsistencies the ALJ noted in discounting Plaintiff's

allegations of symptoms, Plaintiff argued only that he erred by equating not taking anti-

seizure medication with not receiving treatment for seizures, and that he noted she was

treated in emergent care only one time.  The court finds no error.  In the first place,

Plaintiff's argument that every seizure does not require documentation misses the point of

the ALJ's finding that Plaintiff has been treated emergently only once as a result of her

seizures during the relevant period since March 2015.  The ALJ was not suggesting that

every seizure must be documented.  The point is that had Plaintiff been having tonic-

clonic seizures monthly (two seizures a month since at least January 2018 (R. 95)) for

nearly four years, one would expect more than one seizure which would require Plaintiff

to seek emergent or urgent care (work issues, falls, bitten tongue, etc.).  (R. 30).  The

ALJ's finding in this regard is not error.

Plaintiff also misunderstands the ALJ's note that Plaintiff stated she was not

taking anti-seizure medication and his finding that she "does not receive any treatment

for her seizures."  (R. 30).  The portion of the decision to which Plaintiff objects is this:

> Notably, the claimant testified that she is not on any anti-seizure
> medications (See also Exhibit 28F).  Thus, the claimant's representative's
> argument that the claimant met Listing 11.02 is rejected because the
> claimant does not receive any treatment for her seizures and has only one
> recorded episode of seizure activity during the relevant period.

Id.  The first sentence of this portion is addressed to Plaintiff's allegations of symptoms

resulting from her impairments, specifically seizures, and Plaintiff does not argue with

that statement because she admits she "was not prescribed anti-seizure medications at the

time of the hearing."  (Pl. Br. 17).

The second sentence, however, was addressed to counsel's argument at the

hearing that Plaintiff's condition meets Listing 11.02A.  (R. 118-19).  Listing 11.02A is

described as "Epilepsy, documented by a detailed description of a typical seizure and

characterized by … [g]eneralized tonic-clonic seizures, occurring at least once a month

for at least 3 consecutive months despite adherence to prescribed treatment."  20 C.F.R.,

Part 404, Subpt. P, § 11.02A (2019) (parentheses omitted).  The regulations explain the

requirement of a "detailed description," as "at least one detailed description of your

seizures from someone, preferably a medical professional, who has observed at least one

of your typical seizures.  If you experience more than one type of seizure, we require a

description of each type."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.00H(2)

The only "detailed description" of Plaintiff's epileptic, tonic-clonic seizures appearing in the record is the description appearing in the Mayo Clinic records from 2014 and cited by the ALJ when discussing Plaintiff's history of epileptic seizures before discussing her allegations of symptoms.  (R. 29-30) (citing Ex. 5F/3, R. 676).  As relevant here, that record states Plaintiff

> had a one minute seizure consisting of a forced left head turn and tensing of both upper extremities (left more than right).  The seizure progressed into a generalized tonic-clonic seizure. … According to EEG, the seizure arose from the right frontal lobe. … After consulting with the endocrinology team about the results of her testing, it was not felt that hypoglycemia is the cause of her seizures.  Please see the full dictated EEG report for complete details.

> Given the patient's propensity to have focal seizure's that secondarily generalize, she needs to be treated with an antiepileptic medication. Therefore, in the hospital she was given Vimpat IV 400 mg.  Upon dismissal from the hospital, she'll take Vimpat orally at 150 mg twice daily.

(R. 676).  It was based upon this report that the ALJ determined Plaintiff's condition does not meet Listing 11.02A for epilepsy.  As quoted here, the record evidence supports the ALJ's finding Plaintiff is not following the treatment prescribed for her epilepsy. Plaintiff's argument that the ALJ erred in this regard is without merit.  Moreover, as noted above, Plaintiff does not even address the other rationale given to discount Plaintiff's allegations of disabling symptoms.

## III.    Meet or Equal Listing 11.02A

Plaintiff's real argument is that her condition meets or medically equals the severity of Listing 11.02A because she has seizures, either epileptic or hypoglycemic, occurring at least once a month for at least three months despite receiving treatment for

those seizures.  (Pl. Br. 18-19).  As noted above, the ALJ found Plaintiff's condition does

not meet the criteria of Listing 11.00A because she has not adhered to the treatment of

antiepileptic medication prescribed.  Plaintiff argues that such treatment is no longer

prescribed.  But as quoted above, the doctors at the Mayo Clinic determined Plaintiff

"needs to be treated with an antiepileptic medication," and prescribed such medication

for her.  (R. 676).  While Plaintiff argues that she was not prescribed antiepileptic

medication at the time of the hearing (Pl. Br. 17) and implies that such treatment was

affirmatively discontinued, she points to no medical record in which such a determination

was made.  As such, she has not demonstrated that the record evidence compels a finding

contrary to the ALJ's finding—that she was not adhering to treatment prescribed for her

epileptic seizures.  Because Plaintiff suffered from epileptic seizures, within the treatment

expertise of a neurologist, potentially triggered (or perhaps independently caused) by

hypoglycemia, within the treatment expertise of an endocrinologist, Dr. Britton at the

Mayo Clinic recognized the need for someone to "orchestrate continuity of care" between

the medical disciplines.  (R. 686) ("From a long-term care standpoint, they have been

passed between a local endocrinologist and neurologist for this problem with the primary

care provider brokering appointments and referrals in the middle.").  As discussed above,

Plaintiff has shown no evidence which compels a finding that a neurologist affirmatively

decided anti-seizure medication was no longer needed to treat her epileptic seizures.  The

fact Plaintiff was seeing physicians on a relatively regular basis does not compel a

finding that she was adhering to prescribed treatment.  Plaintiff does not point to record

evidence she was seeing a neurologist during the relevant period after March 2015.

12

Although the evidence indicates Plaintiff was referred to a neurologist on January 29, 2016 (R. 1580), the court finds no record of a visit.  Plaintiff has shown no error in the ALJ's finding she does not meet the criteria of Listing 11.02A

Plaintiff's Brief might also be understood to imply that her condition medically equals Listing 11.02A because of epileptic seizures triggered—or possibly enhanced by hypoglycemia or even hypoglycemic "crashes" alone.  Medical equivalence to a listing may be established by showing that Plaintiff's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 404.1526(a), 416.926(a).  If a claimant's impairment does not meet all the criteria of a Listing, the SSA will find it is medically equivalent to the Listing if she has "other findings related to your impairment that are at least of equal medical significance to the required criteria."  Id. §§ 404.1526(b)(1), 416.926(b)(1).  The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience.  20 C.F.R. §§ 404.1526(c), 416.926(c).

SSR 17-2p requires that in order to find medical equivalence in the ALJ hearing decision, the record must contain a prior administrative medical finding or medical expert evidence supporting the medical equivalence finding.  2017 WL 3928306, *3 (SSA March 27, 2017).  Here, the ALJ discussed these requirements:

> None of these evidentiary requirements is satisfied in this case.  The ALJ is not required to obtain medical expert evidence or medical opinion prior finding the claimant's impairment(s) does not medically equal a listed impairment.  Because no evidence supports medical equivalence, the claimant's impairments, considered both singly and in combination, do not medically equal a listed impairment.  Since the record shows no evidence of an impairment which meets or equals the criteria of any listed

impairment or of a combination of impairments equivalent in severity (not in mere numbers) to a listed impairment, disability cannot be established on the medical facts alone.

(R. 28).

Plaintiff does not address the medical equivalence issue directly, but she appears to suggest that adherence to prescribed treatment for hypoglycemia is at least of equal medical significance to adherence to prescribed treatment for epilepsy.  However, she cites to no authority, medical or otherwise, for that proposition and no record evidence demonstrating such equivalent or greater medical significance.  Moreover, she cites no authority or evidence suggesting that, if she has epileptic seizures which are triggered by hypoglycemia, it would be appropriate to accept adherence to prescribed treatment for hypoglycemia without also requiring adherence to prescribed treatment for epilepsy.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 22, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**